

**IT IS ORDERED as set forth below:**

**Date: October 4, 2017**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| TYREE PATTERSON, | CASE NO. 14-65877-PWB |
| Debtor. | |
| | CHAPTER 7 |
| TYREE PATTERSON, | |
| Plaintiff, | |
| | ADVERSARY PROCEEDING |
| v. | NO.  15-5129-PWB |
| UNITED STATES, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

ORDER

Tyree Patterson, the Debtor and Plaintiff in this action, is an employee of a federal agency, the Social Security Administration (the "SSA"). Prior to the filing of his bankruptcy case, Mr. Patterson had exhausted his accrued sick leave and had used and reached a maximum advanced sick leave balance of 240 hours. Per federal regulations and the terms of employment, accrued sick leave is "repaid" by the amount of sick leave that an employee accrues in any given pay period.

Mr. Patterson contends that his advanced sick leave balance is a debt that was discharged in his bankruptcy case and that the SSA's collection of the advanced sick leave from his postpetition sick leave violates the discharge injunction.

The SSA contends that the Court should dismiss the action because the Court lacks subject matter jurisdiction to determine civil service personnel issues or, alternatively, grant summary judgment to it because the doctrine of recoupment allows for recovery of the advanced sick leave from postpetition sick leave. Mr. Patterson has not responded to the motion.

For the reasons stated herein, the Court concludes that the debt arising from the advanced sick leave is subject to recoupment by the SSA and, therefore, the SSA did not violate the discharge injunction by crediting newly accrued sick leave to its balance. Further, to the extent Mr. Patterson seeks determination of any other personnel-related issues with regard to his employment with the SSA, the Court shall abstain pursuant to 28 U.S.C. § 1334(c)(1).

### I.     Factual Background

The following facts are undisputed.

Mr. Patterson is an employee of the SSA. From April 2014 through October 2015, he worked as a Service Representative in the SSA's Atlanta, Georgia office. While employed in Atlanta, the Debtor had numerous disputes with a supervisor, many of which stemmed from absences and his usage of sick leave.

On August 14, 2014, during his tenure in the Atlanta office, Mr. Patterson filed his chapter 7 case. He added the SSA as a creditor on October 16, 2014. At the time of the filing of the bankruptcy case Mr. Patterson had an advanced sick leave balance of 240 hours. He received his chapter 7 discharge on December 10, 2014.

The Court reopened the chapter 7 case on Mr. Patterson's motion on February 20, 2015, and he commenced this action against the SSA the following month.

In October 2015, Mr. Patterson transferred to the Chicago, Illinois SSA office.

### II.     The Positions of the Parties

Mr. Patterson contends that the SSA has continuously taken his postpetition accrued sick leave to repay the prepetition advanced sick leave. Mr. Patterson contends that the SSA was a prepetition creditor and that its debt is discharged.

Mr. Patterson requests the following relief:

1. A determination that any debt owed to the SSA is discharged.

2. That the SSA be required to restore all sick time taken from him to repay the advanced sick leave.

3. That the SSA be barred from collecting any additional sick leave in repayment of the advanced sick leave.

4. That the SSA be required to repay him for any funds garnished from him since the filing of the chapter 7 case.

5. That the SSA be barred from garnishing any more money from him.

6. That the SSA be fined and ordered to pay him $6,500.[1]

The SSA contends that dismissal of this action is warranted because the Court lacks jurisdiction to adjudicate these matters. The SSA contends that the Civil Service Reform Act ("CSRA") is the exclusive administrative procedure for challenging a federal agency's personnel decisions and that the doctrine of sovereign immunity prevents adjudication of these issues is bankruptcy court.

Alternatively, the SSA contends that its recovery of advanced sick leave from the Debtor's continuing accrual of sick leave in postpetition pay periods is permissible based upon the doctrine of recoupment.

### III.   Analysis

A.  The Court's Jurisdiction

The core issue in this adversary proceeding is whether the SSA violated the Debtor's discharge by applying newly accrued, postpetition sick leave towards his prepetition advanced sick leave balance.

---

[1] These claims are contained, collectively, in Mr. Patterson's original complaint [Doc. 1] and amended complaints [Docs. 10, 18].

4

The Court concludes that this adversary proceeding, to the extent it raises issues regarding the existence of a claim and the enforcement of the discharge injunction, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (I) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

The Civil Service Reform Act ("CSRA"), codified in various sections of Title 5 of the United States Code, does not deprive the Bankruptcy Court of jurisdiction to determine discharge-related issues. While the CSRA provides, generally, the exclusive procedure for determination of federal personnel decisions, *see Elgin v. Dept. of Treasury*, 567 U.S. 1 (2012); *U.S. v. Fausto*, 484 U.S. 439 (1988), administrative decisions by the SSA are not the issue here.

The Court does not intend to revisit personnel decisions, grievances, or protocol for dispute resolution for SSA employees. The only issues to be determined are whether (1) the SSA holds a debt based on its advancement of sick leave to Mr. Patterson; and (2) whether the SSA violated his discharge by continuing to apply sick leave earned postpetition to his prepetition sick leave balance. These are clearly bankruptcy issues that this Court has authority to determine.

B. The Nature of the Debt and the Doctrine of Recoupment

*1. Whether Advanced Sick Leave is a Prepetition Debt*

As a threshold matter, the Court must consider the nature of advancedسick leave and whether it is a debt for bankruptcy purposes.

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). The term "claim" is defined as follows, 11 U.S.C. § 101(5):

5

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Thus, the question is whether the SSA has a right to payment or right to an equitable remedy from the Debtor or the Debtor's property arising from the advancement of sick leave during his employment.

The accrual of earned sick leave is a benefit of federal civil service employment. Full-time federal employees earn four (4) hours of paid sick leave each bi-weekly pay period. 5 U.S.C. § 6307(a). If an employee exhausts his accrued sick leave, he may request "advanced sick leave." 5 U.S.C. § 6307(d). The agency may advance a maximum of 240 hours of sick leave to a full-time employee. 5 C.F.R. § 630.402. The advancement of sick leave is in the discretion of the agency. *Id*.

Advanced sick leave is "repaid" with subsequently earned sick leave. [Doc. 59-7, Declaration of Michael Seymour, ¶ 7]; *see* https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/advanced-sick-leave/. In other words, if an employee earns four hours of paid sick leave in a pay period, that four hours would be credited towards and reduce the balance of the advanced sick leave

6

taken. When an employee who is indebted for advanced leave is separated (*i.e.*, leaves the agency's employment), the agency either requires the employee to refund the amount paid to him for the period covering the leave for which he is indebted or deducts that amount from any pay due him. 5 C.F.R. § 630.209. The only exceptions to the repayment requirement are if the employee dies, retires, or resigns due to disability. *Id.*

Because the SSA has a right to payment from Mr. Patterson for the advanced (and unearned) sick leave, he has liability on a claim and, therefore, the advanced sick leave is a debt in his bankruptcy case.

*2. Whether the doctrine of recoupment permits the SSA to recover postpetition leave*

Having determined that the advanced sick leave is a prepetition debt, the Court turns to the issue of whether the SSA's recovery of it from Mr. Patterson's postpetition earned sick leave is permissible.

The Debtor contends that taking his newly earned sick leave to credit the advanced sick leave violates his discharge because the advanced sick leave debt is otherwise dischargeable. The SSA counters that its conduct is permissible based upon the doctrine of recoupment.

Although the term recoupment does not appear in the Bankruptcy Code, it is an equitable principle that is applicable in bankruptcy cases in certain circumstances. *Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993). Recoupment is an equitable defense involving the adjustment of a plaintiff's claim based on amounts owed by the plaintiff

7

to the defendant arising out of the same integrated transaction. *In re Krause, Inc.*, 2005 WL 6487214 (Bankr. N.D. Ga. 2005). The rationale is that "it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2nd Cir.1998) (citation omitted).

In the bankruptcy context, there are two requirements for recoupment to apply to a transaction: (1) there must have been some overpayment by a creditor; and (2) both the creditor's claim and the amount owed to the debtor must arise from a single contract or occurrence. *Kosadnar v. Metro. Life Ins. Co.*, 157 F.3d 1011, 1014 (5th Cir. 1998). If these requirements are satisfied, a creditor may satisfy its prepetition debt on a postpetition basis, notwithstanding the automatic stay.

Thus, if the Court concludes that the SSA made a prepetition overpayment to Mr. Patterson and that the overpayment (the advanced sick leave) and the amount owed to Mr. Patterson (postpetition earned sick leave) arise from the same contract or transaction, then the doctrine of recoupment permits it to reduce its prepetition claim.

The Fifth Circuit Court of Appeals addressed the issue of recoupment in the context of the overpayment of insurance commissions in *Kosadnar v. Metro. Life Ins. Co.*, 157 F.3d 1011 (5th Cir. 1998).

In *Kosadnar*, the debtor was employed by MetLife as an account representative and his compensation was covered by the terms of the company's compensation plan. During the first fifteen weeks of his employment, he was paid $800 per week. One hundred dollars each week was an interim payment, while the $700 balance per week

was considered an "advance" against first-year commissions. Beginning in the sixteenth week of employment, per the compensation plan, the advance payments were to be paid out of the debtor's expense reimbursement account.

In addition, one of the insurance policies sold by the debtor lapsed. Pursuant to the compensation plan, he had an obligation to repay the advanced first-year commission earned on the policy. At some point, based upon changes to the debtor's employment terms, the terms of repayment were changed. All told, MetLife was withdrawing $172.99 per week to recover the debtor's advanced and unearned commissions at the time he filed bankruptcy.

Upon the filing of the debtor's chapter 7 bankruptcy case, MetLife continued to withdraw $172.99 from his paycheck. The debtor contended this violated the automatic stay, but the bankruptcy court and, on appeal, the district court determined that MetLife's actions constituted recoupment.

The Fifth Circuit concluded that MetLife's postpetition deductions constituted a withholding of overpayment arising from the same transaction as the debtor's pay and, therefore, the recovery constituted recoupment. *Kosadnar*, 157 F.3d at 1014.

The *Kosadnar* court analyzed the two-prong test for recoupment. With regard to the first prong of the test, the court concluded that the advances against future commissions and the lapsed policy commissions were prepetition overpayments by MetLife to the debtor and that the employment contract expressly termed the payments "advances." *Id.* ("These overpayments are exactly the type of overpayments the recoupment doctrine contemplates.")

9

With respect to the second prong of the recoupment test, the Fifth Circuit concluded that the repayment of the unearned and advanced commissions arose out of the same commission pool and employment contract as the postpetition commissions earned by the debtor and, therefore, the withholdings constituted recoupment. *Id*. at 1016.

The Court emphasized that the overall compensation plan was "one transaction" that encompassed both MetLife's claims against the debtor based on the prepetition advances and the debtor's claims against MetLife for compensation. Importantly, the compensation plan as a whole contained all the material terms relating to employment and explicitly provided the terms with respect to the debtor's obligation to repay the advanced commissions. The fact that the parties changed the payback schedule for the commission advance made no difference, the Court explained, because the original employment terms clearly contemplated the payback of the commission advances.

The Court also emphasized that the fact that the lapsed policy arose after the debtor and MetLife entered into the original employment contract did not mean that its repayment constituted a different transaction. Instead, the Court concluded, the compensation plan contemplated such a circumstance even if the exact amount or its occurrence was unknown at the time. Because the compensation plan encompassed all

the relevant claims between the parties, application of the recoupment doctrine was permissible.[2]

The well-reasoned analysis of *Kosadnar* is persuasive, and its conclusion applies to the comparable facts here.

First, the Court concludes that the prepetition advancement of sick leave to Mr. Patterson that was otherwise not yet earned by him, was an "overpayment." Just as with *Kosadnar*'s prepetition advanced commissions, the SSA advanced Mr. Patterson sick leave that he had not earned, and the advances came with an obligation to repay them with his future sick leave under the terms of his employment.

The second prong of the recoupment test is also satisfied here. The unearned, advanced sick leave and the postpetition earned sick leave arise out of the same contract or occurrence, namely the employee benefit package and terms of civil service employment.

The accrual of earned sick leave is a benefit of federal civil service employment. Full-time federal employees earn four (4) hours of paid sick leave each bi-weekly pay period. If an employee exhausts his accrued sick leave, an agency may, at the employee's request and in the agency's discretion, advance a maximum of 240 hours of sick leave to a full-time employee. Advanced sick leave is "repaid" with subsequently earned sick leave.

---

[2] Other courts have concluded that prepetition insurance commission advancements may be recovered postpetition from the debtor agent by means of the doctrine of recoupment. *See, e.g.*, Pruett v. American Income Life Ins. Co., 220 B.R. 625 (Bankr. E.D. Ark. 1997); *In re* Ruiz, 146 B.R. 877 (Bankr. S.D. Fla. 1992).

11

In *Kosadnar*, the Fifth Circuit concluded that the employee compensation plan was "one transaction" that encompassed both the employer's claims against the debtor based on the prepetition advances and the debtor's claims against the employer for compensation. The same is true here. The terms of employment between the SSA and Mr. Patterson, namely the federal sick leave policy applicable to employment, constitutes the one transaction encompassing the SSA's claims against Mr. Patterson based on the advancement of sick leave and his claims against the SSA for postpetition sick leave.

The Court concludes, therefore, that the recovery of prepetition advanced sick leave from postpetition earned sick leave constitutes recoupment because (1) the advancement of the leave was an overpayment; and (2) the prepetition advanced sick leave and postpetition earned sick leave arise from the same contract and occurrence.

Although the SSA's advanced sick leave is a claim, its collection does not violate the discharge injunction of 11 U.S.C. § 524. In *In re Izaguirre,* 166 B.R. 484 (Bankr. N.D. Ga. 1994), the bankruptcy court held that the insurance company was entitled to recoup the overpayment of disability benefits, notwithstanding that the claim was discharged. *Izaguirre*, 166 B.R. at 492–494. The court determined that, because recoupment is an equitable defense to a claim that a debtor makes to postpetition benefits, it does not violate § 524(a)(2) because the defense of recoupment adjusts the debtor's claim under the contract or obligation. Thus, recoupment asserted as a defense is not an "offset" to a claim within the meaning of § 524(a)(2). *Id*. at 493.

It follows that the SSA's crediting of postpetition earned sick leave against the prepetition advanced sick leave does not violate Mr. Patterson's discharge.

C. <u>All other issues</u>

Mr. Patterson has asserted several other claims against the SSA that this Court declines to address. To the extent Mr. Patterson seeks any determination of personnel related matters, such as a miscalculation or restoration of sick leave or the litigation of grievances against coworkers, the Bankruptcy Court is not the forum for their resolution. The Court shall abstain from hearing such matters pursuant to 28 U.S.C. § 1334(c)(1).

Mr. Patterson has made a vague request that the SSA reimburse him for all money garnished from the date of filing of his bankruptcy case to the present. (Doc. 10, Amended Complaint, ¶ 7). The complaint, however, does not allege the identity of the garnishing party, the amount of garnishment, or provide any other details that would permit the Court to determine whether a garnishment occurred or, if it occurred, on whose behalf if it was initiated. As such, the Court concludes that Mr. Patterson's claim for reimbursement of garnished funds fails to state a claim upon which relief can be granted and, accordingly, it is dismissed.

### IV. Conclusion

The Court concludes that the doctrine of recoupment permits the Social Security Administration to recover its debt for sick leave advanced prepetition to Mr. Patterson from postpetition sick leave earned by him and that such recovery does not violate the discharge injunction. Mr. Patterson's claim for reimbursement of

13

garnished funds is dismissed.  Finally, the Court abstains from considering all other matters raised in the Debtor's complaint and amended complaints pursuant to 28 U.S.C. § 1334(c)(1).  It is

ORDERED that the Social Security Administration's motion for summary judgment is granted.  A separate judgment shall be entered contemporaneously herewith.

**END OF ORDER**

**Distribution List**

Tyree Patterson
Unit 4S
4122 S. Vincennes Avenue
Chicago, IL 60653

Lena Amanti
United States Attorney's Office, NDGA
Suite 600
75 Ted Turner Drive, SW
Atlanta, GA 30303